UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
                                      :

Fiduciary Network, LLC,
                                      :

        Plaintiff,
                                      :  Civil Case No. 19-cv-00379 (GHW)
   v.
                                      :

Mark P. Hurley,
                                      :

        Defendant.
------------------------------------- X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797

*Attorneys for Plaintiff*
*Fiduciary Network, LLC*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ....................................................................................................ii
**PRELIMINARY STATEMENT** ............................................................................................. 1
**FACTUAL BACKGROUND** ................................................................................................. 3
**ARGUMENT** .......................................................................................................................... 5
**I.  HURLEY'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE HE DOES NOT DISPUTE THAT HIS COMMUNICATIONS WITH PORTFOLIO COMPANY CHIEF EXECUTIVE OFFICERS GIVES RISE TO A TORTIOUS INTERFERENCE CLAIM** ................................................................................... 7
**II. HURLEY TORTIOUSLY INTERFERED WITH FIDUCIARY NETWORK'S PROSPECTIVE BUSINESS RELATIONS BY PUBLICLY FILING AND DISSEMINATING SEALED, CONFIDENTIAL DOCUMENTS** ......................................... 8
    **A.  Hurley's Filing Of The Texas Lawsuit Including Sealed Documents Constitutes Improper Means** ................................................................................................. 8
    **B.  The *Noerr-Pennington* Doctrine Does Not Bar The Tortious Interference Claims** ................................................................................................................. 9
    **C.  Fiduciary Network's Tortious Interference Claims Are Not Barred By Litigation Privilege** ......................................................................................... 13
**CONCLUSION** ..................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**CASES**

*Arnon Ltd v. Beierwaltes*,
    125 A.D.3d 453 (1st Dep't 2015) ...................................................................................6

*C Synca Direct, Inc. v. Scil Animal Care Co.*,
    No. 8:15-CV-794, 2015 WL 5970938 (N.D.N.Y. Oct. 14, 2015) ..............................5

*C=Holdings B.V. v. Asiarim Corp.*,
    992 F. Supp. 2d 223 (S.D.N.Y. 2013)...........................................................................5

*Concourse Nursing Home v. Engelstein*,
    278 A.D.2d 35 (1st Dep't 2000) ..................................................................................11

*Fox News Network, L.L.C. v. Time Warner Inc.*,
    962 F. Supp. 339 (E.D.N.Y. 1997)..............................................................................10

*Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*,
    313 F. Supp. 2d 339 (S.D.N.Y. 2004).........................................................................10

*Hadar v. Pierce*,
    111 A.D.3d 439 (1st Dep't 2013) ................................................................................14

*In re Buspirone Patent Litig.*,
    185 F. Supp. 2d 363 (S.D.N.Y.2002)..........................................................................11

*Kidder, Peabody & Co. v. IAG Int'l Acceptance, Grp. N.V.*,
    No. 94 CIV. 4725 CSH, 1997 WL 539772 (S.D.N.Y. Aug. 28, 1997) ......................6

*Knight v. U.S. Fire Ins. Co.*,
    804 F.2d 9 (2d Cir. 1986)...............................................................................................7

*Krasnyi Oktyabr, Inc. v. Trilini Imports*,
    578 F. Supp. 2d 455 (E.D.N.Y. 2008) ..........................................................................6

*Lab Crafters, Inc. v. Flow Safe, Inc.*,
    No. CV034025SJFETB, 2008 WL 11449206 (E.D.N.Y. July 2, 2008)....................6

*Lacher v. Engel*,
    33 A.D.3d 10 (1st Dep't 2006) ....................................................................................13

*LightSquared Inc. v. Deere & Co.*,
    No. 13 CIV. 8157 RMB, 2014 WL 345270 (S.D.N.Y. Jan. 31, 2014)..............10, 11

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*,
    419 F. Supp. 3d 668 (S.D.N.Y. 2019).................................................................13, 14

*Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*,
   701 F. Supp. 2d 568 (S.D.N.Y. 2010)...................................................................................11

*Singh v. Sukhram*,
   56 A.D.3d 187 (2d Dep't 2008) ....................................................................................12, 13

*Spear Pharm., Inc. v. William Blair & Co., LLC*,
   610 F. Supp. 2d 278 (D. Del. 2009).......................................................................................9

*Sykes v. Mel Harris & Assocs., LLC*,
   757 F. Supp. 2d 413 (S.D.N.Y. 2010)..................................................................................14

*Tuosto v. Philip Morris USA Inc.*,
   No. 05CIV.9384(PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ................................10

*UMG Recordings, Inc. v. Escape Media Grp., Inc.*,
   948 N.Y.S.2d 881 (2012), *rev'd on other grounds*,
   107 A.D.3d 51 (1st Dep't 2013) ...........................................................................................12

*Universal City Studios, Inc. v. Nintendo Co.*,
   797 F.2d 70 (2d Cir. 1986)..................................................................................................6, 9

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000)......................................................................................................8

*Whitehurst v. 230 Fifth, Inc.*,
   998 F. Supp. 2d 233 (S.D.N.Y. 2014).....................................................................................5

**PRELIMINARY STATEMENT**

Defendant Mark P. Hurley ("Hurley") does not dispute that Plaintiff Fiduciary Network, LLC ("Fiduciary Network" or "the Company") had lucrative business relationships and expectations of additional business opportunities with the portfolio companies and prospective portfolio companies in which it invested. Nor does Hurley dispute that, beginning immediately after the sale of his interest in the Company to non-party EB Safe, LLC ("EB"), he sought to interfere with those relationships. As detailed in Fiduciary Network's motion for summary judgment, Hurley's improper interference included (i) calling the chief executive officers of every portfolio company on the day EB's purchase of his interest closed and falsely telling those executives that he and the entire management team had been terminated and threatening litigation against the co-chief executive officer of one of the largest portfolio companies; (ii) plotting and carrying out a strategy to disseminate confidential information that was sealed by two different courts by including it in a publicly filed lawsuit in Texas and then disseminating that lawsuit to the portfolio companies and the media; and (iii) seeking to use information gleaned from years of serving as the chief executive officer of Fiduciary Network to advise and assist the portfolio companies on renegotiating the terms of their agreements with the Company.

Hurley nevertheless seeks summary judgment dismissing Fiduciary Network's tortious interference claims on the ground that filing his Texas lawsuit against Fiduciary Network's affiliates and Board members is protected litigation activity and does not constitute wrongful or improper means. Hurley's motion does not even address his first and third categories of misconduct – calling the chief executive officers of all of the portfolio companies immediately after the closing to tell them EB fired the entire management team and to disparage EB, and subsequently using his confidential knowledge of the Company to assist the portfolio companies in efforts to renegotiate their arrangements with Fiduciary Network. As demonstrated in

1

Fiduciary Network's memorandum of law in support of its motion for summary judgment, those undisputed facts alone support a finding of liability against Hurley. At a minimum, those facts are sufficient to require a trial as to Fiduciary Network's tortious interference claims.

Moreover, Hurley's attacks on the legal sufficiency of the allegations concerning his publicly filing and disseminating sealed, confidential information in his Texas lawsuit misses the mark. Hurley's wrongful conduct giving rise to tortious interference claims is not his pursuit of meritless claims against the Company's directors and affiliates, but his improper tactics in doing so – the publicly filing and dissemination of confidential information that had been sealed by two courts. Those wrongful means are not insulated by litigation privilege or the *Noerr-Pennington* doctrine simply by virtue of having been undertaken in connection with a litigation. And neither the litigation privilege nor the *Noerr-Pennington* doctrine have any bearing on the remainder of Hurley's tortious conduct in this case – namely threatening chief executive officers of a portfolio company and attempting to assist the portfolio companies in their negotiations with Fiduciary Network.

In any event, there is no merit to Hurley's argument that his lawsuit was not frivolous or improperly filed in court rather than arbitration by virtue of the United State District Court for the Northern District of Texas issuing a 21-page Memorandum Opinion and Order that compelled arbitration of all of Hurley's claims. Contrary to Hurley's assertions, Judge Jane J. Boyle did not suggest in her thorough opinion that "the question of whether the parties should arbitrate was not inherently obvious" or that his lawsuit was not frivolous. Similarly, the *Noerr-Pennington* doctrine does not apply because the challenged activity – Hurley's publicly filing sealed materials in his Texas lawsuit – has nothing to do with lobbying or petitioning the government. And the doctrine of litigation privilege, which applies to defamation, slander, and

2

libel actions, does not bar Fiduciary Network's claims because New York courts have not extended the litigation privilege to tortious interference claims.

For all of these reasons, Defendant's motion for partial summary judgment should be denied.

**FACTUAL BACKGROUND[1]**

EB exercised its Right of First Refusal ("ROFR") and purchased Hurley's interest in the Company on November 20, 2018. Pl. Resp. SUF ¶ 25. Immediately after learning that EB had exercised its ROFR and terminated him as chief executive officer, Hurley immediately contacted the chief executive officers of all of Fiduciary Network's Portfolio Companies that same day. Pl. Resp. SUF ¶ 26. Hurley called the CEOs to tell falsely them that "everybody in the organization had been terminated." Pl. Resp. SUF ¶ 27.

Then, on December 7, 2018, Hurley filed litigation against EB and the EB appointees on the Fiduciary Network board in state court in Texas alleging tortious interference, defamation, business disparagement, breach of fiduciary duty, aiding and abetting and civil conspiracy. Pl. Resp. SUF ¶ 31; Declaration of Neil A. Steiner ("Steiner Decl.") Ex. 2.[2] In the days leading up to the filing of the Texas lawsuit, Hurley also discussed media planning and media strategy with his counsel at the Brewer firm and with the public relations consultants working for the Brewer firm. Pl. Resp. SUF ¶ 44. Hurley's lawsuit quoted from and attached copies of numerous documents from prior arbitrations between the parties that were subject to a Confidentiality Order in the arbitrations, and several of them had also been sealed by orders of federal and state

---

[1] This Statement of Facts is drawn from Fiduciary Network's Response to Defendant Mark P. Hurley's Rule 56.1 Statement of Undisputed Facts ("Pl. Resp. SUF").
[2] All documents cited "Steiner Decl. Ex. __" are annexed to the Declaration of Neil A. Steiner dated June 18, 2020.

3

court judges in New York, but his lawsuit was publicly filed without redaction and without seeking to have the confidential material filed under seal. Pl. Resp. SUF ¶ 33.

On December 10, 2018, Hurley forwarded his unredacted complaint in the Texas lawsuit along with copies of all of the exhibits, including the sealed exhibits that were improperly publicly filed, to the chief executive officers of twelve of Fiduciary Network's fourteen Portfolio Companies. Pl. Resp. SUF ¶ 34. Even though such filings should have been sealed, Hurley sent the materials to the Portfolio Companies because in his view "they just needed to be fully informed to know what was going on" in his dispute with EB. Pl. Resp. SUF ¶¶ 34-37.[3]

Moreover, news articles regarding Hurley's Texas lawsuit began appearing almost immediately after the lawsuit was filed, Pl. Resp. SUF ¶ 20, including one article in the New York Post that quotes from an exhibit that had previously been filed under seal in New York and was buried in the 752 pages of exhibits in Hurley's public filing in Texas. Pl. Resp. SUF ¶ 33. Hurley further admitted that he also discussed and responded to questions concerning the litigation from the chief executive officers and industry professionals. Pl. Resp. SUF ¶ 42. And Hurley admitted that he continues to advise the chief executive officers of certain of the Portfolio Companies on strategies to attempt to renegotiate the terms of their deals with Fiduciary Network. Pl. Resp. SUF ¶ 29–30.

---

[3] Hurley's explanation rings particularly hollow because he sought to maintain the sealing of the actions in both state and federal court in New York to limit dissemination of his domestic violence arrest and his ex-wife's affidavit detailing the events that led to his arrest. He intentionally excluded those documents from his public Texas filing, thereby further misusing the sealing orders.

4

## ARGUMENT

Fiduciary Network's claim for tortious interference with prospective economic advantage and business relations under New York law[4] requires it to prove that: (1) "it had a business relationship with a third party"; (2) "the defendant knew of that relationship and intentionally interfered with it"; (3) "the defendant acted solely out of malice, or used dishonest, unfair, or improper means"; and (4) "the defendant's interference caused injury to the relationship." *Whitehurst v. 230 Fifth, Inc.*, 998 F. Supp. 2d 233, 260 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). Hurley does not dispute that Fiduciary Network has, at a minimum, produced sufficient evidence to establish all of these elements with respect to his improper calls to the portfolio companies after EB's purchase of his interest and his threats to the co-chief executive officer of one of the portfolio companies, or with respect to his efforts to assist the portfolio companies in their negotiations with Fiduciary Network.

The only element of Fiduciary Network's claim that Hurley challenges, and only with respect to the filing of his Texas litigation, is the third prong – that he "acted solely out of malice, or used dishonest, unfair, or improper means . . . ." *Id.* (internal quotation marks and citations omitted). The element of improper or wrongful means can be satisfied by any "conduct that amounts to 'an independent crime or tort[,]'" "conduct that is taken 'solely out of malice[,]'"

---

[4] Under New York law, tortious interference with prospective economic advantage, tortious interference with prospective business relations or advantage, and tortious interference with business relations all refer to the same tort. *See, e.g.*, *C Synca Direct, Inc. v. Scil Animal Care Co.*, No. 8:15-CV-794, 2015 WL 5970938, at *5 (N.D.N.Y. Oct. 14, 2015) (noting tortious interference with prospective economic advantage is "sometimes denoted" as tortious interference with prospective business relations) (citing *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008); *C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 246 n.14 (S.D.N.Y. 2013) ("Tortious interference with prospective business advantage and tortious interference with business relations . . . are two names for the same tort.") (citing *Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x. 102, 105 (2d Cir. 2012)).

or "conduct that amounts to 'extreme and unfair' economic pressure." *Lab Crafters, Inc. v. Flow Safe, Inc.*, No. CV034025SJFETB, 2008 WL 11449206, at *34 (E.D.N.Y. July 2, 2008) (quoting *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 169–70 (S.D.N.Y. 2008), *aff'd*, 321 F. App'x 58 (2d Cir. 2009)). Here, the core wrongful conduct at issue is Hurley's publicly filing documents that were subject to sealing orders issued by two different courts, and the subsequent dissemination of those sealed documents to the media and to the chief executive officers of every portfolio company. Plainly, violation of a court order is wrong conduct.

Moreover, this element can be met by civil suits that are frivolous. *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 472 (E.D.N.Y. 2008); *Arnon Ltd v. Beierwaltes*, 125 A.D.3d 453, 453–54 (1st Dep't 2015) ("Where the interfering conduct is a civil suit, it must be shown that the suit was 'frivolous.'") (quoting *Pagliaccio v. Holborn Corp.*, 289 A.D.2d 85 (1st Dep't 2001)). A lawsuit or the threat of a lawsuit is wrongful "'if the actor has no belief in the merit of the litigation'" or "if the actor, having some belief in the merit of the suit, 'nevertheless institutes or threatens to institute the litigation in bad faith, intending only to harass the third parties and not to bring his claim to definitive adjudication.'" *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 75 (2d Cir. 1986) (quoting Restatement (Second) of Torts) § 767, comment c (West 2020)); *see also Kidder, Peabody & Co. v. IAG Int'l Acceptance, Grp. N.V.*, No. 94 CIV. 4725 CSH, 1997 WL 539772, at *7 (S.D.N.Y. Aug. 28, 1997) ("A party's initiation of a civil suit without belief in its merit or for the purpose of harassment can constitute the sort of improper conduct which may give rise to this tort.") (citations omitted).

**I.     HURLEY'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE HE DOES NOT DISPUTE THAT HIS COMMUNICATIONS WITH PORTFOLIO COMPANY CHIEF EXECUTIVE OFFICERS GIVES RISE TO A TORTIOUS INTERFERENCE CLAIM**

Fiduciary Network's memorandum of law in support of its motion for summary judgment in this matter demonstrated that it is entitled to summary judgment as to liability on its tortious interference with business relations claim.  Pl.'s Memo of Law at 18-21.  Among the undisputed facts supporting summary judgment, the Company established that Hurley's calls to the chief executive officers of every one of Fiduciary Network's portfolio companies immediately after EB completed the purchase of Hurley's interest in the Company and his subsequent efforts to assist the portfolio companies in renegotiating their agreements with Fiduciary Network constituted improper means.  Hurley does not even address these two categories of his wrongful conduct in his motion for summary judgment.  Either set of wrongful conduct, standing alone and irrespective of Hurley's improper public filing of sealed documents in his litigation in Texas, is sufficient for a finding of liability against Hurley.  Because those facts are undisputed, as demonstrated in Fiduciary Network's motion, summary judgment as to liability should be entered in favor of Fiduciary Network.  *See Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986) ("[A] court shall grant a motion for summary judgment if it determines that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'") (quoting Fed. R. Civ. P. 56(a)).  At a minimum, Hurley's motion for summary judgment should be denied.

## II. HURLEY TORTIOUSLY INTERFERED WITH FIDUCIARY NETWORK'S PROSPECTIVE BUSINESS RELATIONS BY PUBLICLY FILING AND DISSEMINATING SEALED, CONFIDENTIAL DOCUMENTS

### A. Hurley's Filing Of The Texas Lawsuit Including Sealed Documents Constitutes Improper Means

Hurley's public filing of the Texas lawsuit constitutes improper and wrongful means. First, all of the claims were subject to a mandatory arbitration clause and therefore required to be adjudicated confidentially in arbitration. Further, Hurley improperly filed publicly documents that were subject to confidentiality orders issued by arbitrators and sealing orders issued by two different courts.

Hurley argues that the fact that he improperly filed a litigation rather than an arbitration was not improper or wrongful because "the question of whether the parties should arbitrate was not inherently obvious." Def.'s Memo of Law at 9. Hurley bases his argument entirely on the fact that Judge Boyle of the Northern District of Texas issued a 21-page Memorandum Opinion and Order thoroughly analyzing the motion to compel arbitration. *Id.* Contrary to Hurley's argument, however, the Memorandum Opinion does not even remotely suggest that the question was "not inherently obvious." *See* Collins Decl. Ex. D. The mere length of Judge Boyle's opinion does not make Hurley's decision to file a public lawsuit (or include sealed documents in his filing) rather than a confidential arbitration justified.

Moreover, on Hurley's summary judgment motion, all inferences must be drawn in favor of Fiduciary Network. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) ("When viewing the evidence, the court must assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor.") (internal quotation marks and citations omitted). The inferences to be drawn from Hurley's use of the Texas litigation to file publicly documents that had been sealed strongly support the conclusion that

8

Hurley brought the Texas lawsuit in bad faith, "intending only to harass the third parties and not to bring his claim to definitive adjudication." *See Universal City Studios*, 797 F.2d at 75 (internal quotation marks and citations omitted) (affirming district court's finding that plaintiff "did not have a good faith basis" for sending cease and desist letters which were intended to obtain quick settlement payments from third parties, and not to adjudicate its claims). Indeed, the strong inference that Hurley's intent was to harass and inflict harm on Fiduciary Network is further confirmed by the fact Hurley promptly forwarded his Texas complaint including the sealed documents to the chief executive officers of all but two of Fiduciary Network's portfolio companies. Pl. Resp. SUF ¶¶ 31-37.

### B. The *Noerr-Pennington* Doctrine Does Not Bar The Tortious Interference Claims

Hurley argues that he cannot be held liable for tortious interference with contract based on his filing of the Texas litigation because the *Noerr-Pennington* doctrine precludes imposing liability on a litigant pursuing litigation and seeking redress in the courts. *Noerr-Pennington* does not apply here, however, because, as explained above, Hurley's tortious conduct is not the filing of the Texas litigation itself but his purposeful violation of sealing orders by publicly filing and disseminating sealed documents. *See Spear Pharm., Inc. v. William Blair & Co., LLC*, 610 F. Supp. 2d 278, 288 (D. Del. 2009) (holding that defendants are not relieved from liability under the *Noerr-Pennington* doctrine "merely because they then used a petition to a government agency as the mechanism for allegedly harming Plaintiffs" because the "[u]se of trade secrets in violation of a confidentiality agreement or in breach of a fiduciary duty is not protected by the First Amendment.") (internal quotation marks and citations omitted).

In any event, *Noerr-Pennington* is inapplicable to Hurley's Texas lawsuit because that lawsuit does not involve lobbying or petitioning the government. The Second Circuit has

9

recognized the doctrine to be "'an application of the [F]irst [A]mendment'" because "an important policy behind the *Noerr-Pennington* doctrine is the need to protect the right of the people to participate in the political process." *Friends of Rockland Shelter Animals, Inc. (FORSA) v. Mullen*, 313 F. Supp. 2d 339, 343 (S.D.N.Y. 2004) (quoting *Suburban Restoration Co. v. ACMAT Corp.*, 700 F.2d 98, 101 (2d Cir. 1983)); *see also Fox News Network, L.L.C. v. Time Warner Inc.*, 962 F. Supp. 339, 345 (E.D.N.Y. 1997) ("To protect this [First Amendment] right, the courts have adopted the *Noerr-Pennington* doctrine, prohibiting suits where the challenged activity involves lobbying.") (internal quotation marks and citations omitted). The Second Circuit "has yet to decide whether the *Noerr–Pennington* doctrine . . . must be applied mechanically in cases outside the antitrust area." *LightSquared Inc. v. Deere & Co.*, No. 13 CIV. 8157 RMB, 2014 WL 345270, at *4 (S.D.N.Y. Jan. 31, 2014) (quoting *Mosdos Chofetz Chaim, Inc. v. Vill. Of Wesley Hills*, 701 F. Supp. 2d 568, 594 (S.D.N.Y. 2010)) (internal quotation marks omitted).

Where the doctrine has been extended to tortious interference claims, the challenged activity has generally involved lobbying or petitioning the government, consistent with the policy behind the doctrine. *Tuosto v. Philip Morris USA Inc.*, No. 05CIV.9384(PKL), 2007 WL 2398507, at *5 (S.D.N.Y. Aug. 21, 2007) ("*Noerr–Pennington* has also been applied to bar liability in state common law tort claims, including negligence and products liability claims, *for statements made in the course of petitioning the government*.") (emphasis added); *see, e.g.*, *Friends of Rockland Shelter Animals*, 313 F. Supp. 2d at 343–44 (alleged tortious interference was "an attempt to influence the government"); *Fox News Network*, 962 F. Supp. at 346 (challenged activity was "aimed at procuring government action favorable to Fox"); *Concourse*

10

*Nursing Home v. Engelstein*, 278 A.D.2d 35, 35 (1st Dep't 2000) (alleged tortious conduct involved "the petitioning of a governmental agency").

To determine whether the *Noerr-Pennington* doctrine applies, this Court is "required first to decide, among other things, (1) whether [Hurley's Texas lawsuit is] 'petitioning activity,' . . . and, if so, (2) whether [Fiduciary Network]'s claims are 'based upon' such petitioning activity." *LightSquared*, 2014 WL 345270, at *4 (quoting *In re Buspirone Patent Litig.*, 185 F. Supp. 2d 363, 370 (S.D.N.Y.2002) and *Clinton v. Brown & Williamson Holdings, Inc.,* No. 05–CV–9907, 2013 WL 3111122, at *10 (S.D.N.Y. June 20, 2013)). Petitioning activity under the *Noerr-Pennington* doctrine consists of "conduct aimed at persuading the government of a position or expressing views in these kinds of circumstances." *In re Buspirone Patent Litig.*, 185 F. Supp. 2d at 370. All of the claims alleged in Hurley's Texas lawsuit – tortious interference, defamation, business disparagement, breach of fiduciary duty, aiding and abetting and civil conspiracy – have nothing to do with persuading the government and therefore cannot constitute petitioning activity for purposes of receiving protection under the *Noerr-Pennington* doctrine. *See id.* at 371–73 (holding that the *Noerr-Pennington* doctrine did not apply to conduct in submitting information to the FDA to list a patent in the Orange Book of approved drug products, which is "much closer to the filing of a tariff than to genuine acts of petitioning the government").

Even if the *Noerr-Pennington* doctrine applied – it does not – Fiduciary Network's claims are not barred by the doctrine because Hurley's Texas lawsuit was a "sham." The "sham" exception to the *Noerr-Pennington* doctrine applies where "the litigation is (1) 'objectively baseless' and (2) intended to cause harm to the defendant 'through the use of governmental process—as opposed to the outcome of that process.'" *Mosdos Chofetz Chaim,* 701 F. Supp. 2d

11

at 597 (quoting *T.F.T.F. Capital Corp. v. Marcus Dairy, Inc.*, 312 F.3d 90, 93 (2d Cir. 2002)). Here, Hurley's public filing of the Texas litigation including confidential, sealed documents notwithstanding the binding arbitration clause in Fiduciary Network's LLC Agreement falls squarely within the sham litigation exception to *Noerr-Pennington*.

The first prong is an objective element which "requires that the defendant's conduct must be objectively baseless with no reasonable expectation of success." *Singh v. Sukhram*, 56 A.D.3d 187, 192 (2d Dep't 2008) (quoting *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 61 (1993)). The second prong is subjective, "requir[ing] that the defendant act, not with the intent of influencing governmental action, but rather with the intent to 'interfere directly with the business relationships of a competitor.'" *Id.* (quoting *Prof'l Real Estate Inv'rs*, 508 U.S. at 61).

Furthermore, the *Noerr-Pennington* doctrine does not provide absolute protection to pre-litigation threats such as Hurley's threat to the co-chief executive officer of Pathstone. *See UMG Recordings, Inc. v. Escape Media Grp., Inc.*, 948 N.Y.S.2d 881, 891 (2012), *rev'd on other grounds*, 107 A.D.3d 51 (1st Dep't 2013). In *UMG Recordings*, the court found that plaintiff's alleged communications with third parties were not "reasonably and normally attendant upon effective litigation" because they were not incidental to plaintiff's claims for common law copyright infringement and unfair competition claims but rather "constituted an economic attack on the whole of [defendant]'s business." *Id.* The court held that it "will not extend the protection of the *Noerr-Pennington* doctrine, as it applies to litigation, to acts allegedly undertaken to harm a competitor, where such acts are not related in a reasonably direct manner to halting the acts complained of in the underlying litigation." *Id.* at 891–92.

The subjective prong of the sham litigation exception is also readily met here because Hurley's Texas lawsuit was filed with the intent to "interfere directly with the business relationships of [Fiduciary Network]." *See Singh*, 56 A.D.3d at 192 (internal quotation marks and citations omitted). As discussed *supra*, Section I, after EB exercised its right of first refusal and purchased Hurley's interest in Fiduciary Network, Hurley immediately set off to damage the Company and forwarded his Texas complaint to the chief executive officers of twelve Portfolio Companies. Pl. Resp. SUF ¶¶ 31-37. Shortly after the filing of his complaint, several articles regarding Hurley's lawsuit were published, including an article in the New York Post, generating negative publicity for Fiduciary Network. Pl. Resp. SUF ¶¶ 38-41. Given that Hurley's Texas lawsuit is both objectively and subjectively a sham, it is not immunized under the *Noerr-Pennington* doctrine.

### C. Fiduciary Network's Tortious Interference Claims Are Not Barred By Litigation Privilege

The doctrine of litigation privilege also does not apply to Fiduciary Network's tortious interference claims. "Under New York law, 'statements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding.'" *Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 692 (S.D.N.Y. 2019) (internal quotation marks and citations omitted). The privilege applies to defamation, slander, and libel actions where allowing such statements to be a basis for these actions "would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires." *Id.* (quoting *Front. Inc. v. Khalil*, 24 N.Y.3d 713, 718 (2015)); *see also Lacher v. Engel*, 33 A.D.3d 10, 13 (1st Dep't 2006) ("[The litigation privilege] rests on

the policy that counsel should be able to 'speak with that free and open mind which the administration of justice demands' without the constant fear of libel suits.") (quoting *Youmans v. Smith*, 153 N.Y. 214, 219 (1897)).

As Defendant acknowledges, New York courts have not extended the litigation privilege to tortious interference claims (Def.'s Memo of Law at 13). And it would be particularly inappropriate to extend the privilege to such claims here, where Hurley is seeking protection for his own serious violations of two different court orders. *See Michelo*, 419 F. Supp. 3d at 692–93 (distinguishing defamation actions and holding the litigation privilege to be inapplicable to plaintiff's claims brought under the Fair Debt Collection Practices Act and New York state law); *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 429 (S.D.N.Y. 2010) ("Because plaintiffs have not claimed defamation, the privilege is wholly inapplicable here [where plaintiffs brought claims under Fair Debt Collection Practices Act, Racketeer Influenced and Corrupt Organizations Act, and New York state law]"). Hurley's reliance on *Hadar v. Pierce*, 111 A.D.3d 439 (1st Dep't 2013), is misplaced because while the court acknowledged that "[t]he judicial proceedings privilege applies to causes of action other than defamation[,]" it was applied to causes of actions that were based on allegedly false statements in the complaint and the court expressly declined to decide whether it should apply to the claim for tortious interference with prospective economic relations. *Id.* at 440 (citations omitted).

# **CONCLUSION**

For the foregoing reasons, Hurley's motion for partial summary judgment dismissing Fiduciary Network's Second and Third Claims for Relief should be denied.

Dated: New York, New York
July 16, 2020

DECHERT LLP

By: /s/ Neil A. Steiner
　　　Andrew J. Levander
　　　Neil A. Steiner
　　　Hayoung Park
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
andrew.levander@dechert.com
neil.steiner@dechert.com
hayoung.park@dechert.com

*Attorneys for Plaintiff*
*Fiduciary Network, LLC*