**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Fiduciary Network, LLC,**

                              **Plaintiff,**

              **v.**                          **Case No: 1:19-cv-00379-GHW**

**Mark P. Hurley,**                          **Oral Argument Requested**

                              **Defendant.**

**DEFENDANT MARK P. HURLEY'S MEMORANDUM OF LAW IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

William A. Brewer III (Bar No. 700217)
wab@brewerattorneys.com
Michael J. Collins (Bar No. 3971348)
mjc@brewerattorneys.com
BREWER, ATTORNEYS & COUNSELORS
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone:  (212) 489-1400
Facsimile:  (212) 751-2849

**ATTORNEYS FOR DEFENDANT**
**MARK P. HURLEY**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..........................................................................1

II.   ARGUMENTS AND AUTHORITIES..........................................................................1

    A.    Summary Judgment Standard. .......................................................................1

    B.    Fiduciary Network Is Not Entitled to Summary Judgement on Its Claim For Declaratory Judgment (First Claim For Relief). .......................................................3

        1.    The investigation was initiated and conducted by third parties within the meaning of section 6.7(a) of the LLC Agreement. ................................4

        2.    The investigation constituted an "action" or "proceeding" within the meaning of section 6.7(a) of the LLC Agreement. ....................................6

        3.    Section 6.7(a) has been satisfied because the attorneys' fees and expenses incurred by Hurley were incurred by reason of "his status as an employee and officer of Fiduciary Network". ...................................9

        4.    Fiduciary Network has not established as a matter of law that Hurley engaged in wrongful conduct.....................................................................10

        5.    The attorneys' fees and expenses Hurley incurred in connection with the investigation are separate and apart from the fees he incurred in connection with the arbitration. .................................................................12

        6.    Hurley does not contend that section 18-108 of the Delaware Limited Liability Company Act mandates that he is entitled to reimbursement of the attorneys' fees and expenses he incurred in connection with the investigation. .............................................................12

        7.    Summary. .............................................................................................12

    C.    Fiduciary Network Is Not Entitled To Summary Judgment On The Liability Portion Of Its Claim For Tortious Interference With Prospective Economic Advantage (Second Claim For Relief)................................................................13

    D.    Fiduciary Network Is Not Entitled To Summary Judgment On Its Request For Injunctive Relief (Third Claim For Relief). ....................................................21

    E.    Fiduciary Network's Motion Should Be Denied For All The Reasons Stated In Connection With Hurley's Motion For Partial Summary Judgment.................22

    F.    Fiduciary Network's Motion Should Be Denied Because Fiduciary Network Does Not Have Standing To Assert Certain Aspects Of Its Claims......................23

III.   CONCLUSION...............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvord & Swift v. Stewart M. Mueller Constr. Co.*,
385 N.E.2d 1238 (Ct. App. N.Y. 1978) ................................................24

*Amaker v. Foley*,
274 F.3d 677 (2d Cir. 2001).........................................................3, 14

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986)........................................................................2

*Auletta v. Tully*,
576 F.Supp. 191 (N.D.N.Y. 1983), *aff'd*, 732 F.2d 142 (2d Cir. 1984)..................2

*Bazak Int'l Corp. v. Tarrant Apparel Group*,
378 F.Supp. 2d 377 (S.D.N.Y. 2005)....................................................1

*Binder v. Long Island Lighting Co.*,
933 F.2d 187 (2d Cir.1991)................................................................2

*Bryant v. Maffucci*,
923 F.2d 979 (2d Cir. 1991)...............................................................2

*Carvel Corp. v. Noonan*,
818 N.E.2d 1100 (N.Y. 2004).............................................................14

*Champion v. Artuz*,
76 F.3d 483 (2d Cir. 1996).................................................................3

*Compagnie Financiere de CIC et de L'Union Europeene v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
232 F.3d 153 (2d Cir. 2000)...............................................................9

*Cordts-Auth v. Crunk, LLC*,
815 F.Supp.2d 778 (S.D.N.Y. 2011).....................................................25

*Debary v. Harrah's Operating Co., Inc.*,
465 F.Supp.2d 250 (S.D.N.Y. 2006)......................................................23

*Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*,
902 F.2d 174 (2d. Cir. 1990)...............................................................2

*Egelston v. State Univ. Coll. at Geneseo.*
535 F.2d 752 (2d Cir. 1976)................................................................2

*El Paso Pipeline Co, LLC v. Brinckerhoff*,
    152 A.3d 1248 (Del. 2016) ........................................................................................24

*Forest City Daly Hous., Inc. v. Town of North Hempstead*,
    175 F.3d 144 (2d Cir.1999)........................................................................................21

*Friedberg v. Hurley*,
    Index No. 651873/18 (NY Sup. Ct.) ...........................................................................5

*Friedman v. Coldwater Creek, Inc.*,
    551 F. Supp. 2d 164 (S.D.N.Y.2008)........................................................................14

*Gallo v. Prudential Residential Services Ltd Partnership*,
    22 F.3d 1219 (2d Cir. 1994)........................................................................................2

*Gibralter v. City of New York*,
    612 F.Supp. 125 (E.D.N.Y. 1985) ..............................................................................2

*Holtz v. Rockefeller & Co., Inc.*,
    258 F.3d. 62 (2d Cir. 2001).........................................................................................3

*I.R.V. Merch. Corp., v. Jay Ward Prods., Inc.*,
    856 F. Supp. 168 (S.D.N.Y. 1994) ...........................................................................24

*Kidder, Peabody & Co. v. IAG Intern. Acceptance, Group N.V.*,
    Case no. 94 Civ. 4725 CSH, 1997 WL 539772 (S.D.N.Y. 1997) .............................18

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006).......................................................................................14

*Kronos, Inc. v. AVX Corp.*,
    612 N.E.2d 289 (N.Y. 1993).......................................................................................23

*Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*,
    595 F.3d 458 (2d Cir. 2016).........................................................................................8

*LeBlanc Sternberg v. Fletcher*,
    143 F.3d 765 (2d Cir. 1998).......................................................................................18

*Maruki, Inc. v. Lefrak Fifth Ave. Corp.*,
    161 A.D.2d 264 (1st Dep't 1990) ..............................................................................24

*Missigman v. USI Northeast, Inc.*,
    131 F.Supp.2d 495 (S.D. N.Y. 2001).........................................................................18

*PKG Group, LLC v. Gamma Croma, S.p.A.*,
    446 F.Supp.2d 249 (S.D.N.Y. 2006)..........................................................................14

*Thompson v. County of Franklin*,
  15 F.3d 245 (2d Cir.1994) ..............................................................................................23

*Thompson v. Gjivoje.*
  896 F.2d 716 (2d Cir. 1990) ...............................................................................................2

*U.S.S.E.C. v. Citigroup Glob. Markets, Inc.*,
  752 F.3d 285 (2d Cir. 2014) .............................................................................................21

**Other Authorities**

Fed. R. Civ. P. 56(c) ......................................................................................................2, 19

Restatement Second of Torts § 768, cmt. (e) ....................................................................14

Defendant Mark P. Hurley ("Hurley") submits his memorandum of law in opposition to Plaintiff Fiduciary Network, LLC's ("Fiduciary Network") motion for summary judgment (the "Motion"), as follows:

## I.

## PRELIMINARY STATEMENT

Fiduciary Network's Motion should be denied in its entirety because Fiduciary Network has failed to demonstrate the lack of a genuine issue of material fact as to each element of its three claims. Fiduciary Network seeks summary judgment on its claim for declaratory relief (first claim for relief), tortious interference with prospective business advantage (second claim for relief), and injunctive relief based on the claim for tortious interference (third claim for relief). For purposes of its Motion, Fiduciary Network is required to present "admissible evidence" on each element of its claims, because it will have the burden of proof at trial on those claims.[1] As demonstrated below, the Motion must be denied because Fiduciary Network has not even come close to satisfying its burden and, therefore, has not demonstrated that it is entitled to judgment as a matter of law.

## II.

## ARGUMENTS AND AUTHORITIES

**A.**     **Summary Judgment Standard.**

In its motion for summary judgment, Fiduciary Network seeks summary judgment on its three claims:  (1) its first claim for relief (declaratory relief); (2) its second claim for relief (tortious interference with prospective business advantage); and (3) its third claim for relief (injunctive

---

[1] *See Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 391 (S.D.N.Y. 2005) ("The principles governing admissibility of evidence apply equally on a motion for summary judgment as in trial.").

relief based on the tortious interference claim).[2]  At trial, Fiduciary Network will have the burden of proof on each of its claims.[3]  Accordingly, in connection with its motion, Fiduciary Network must present admissible evidence as to each and every element of each of its claims, and demonstrate the lack of any genuine issues of material fact.[4]

In addition, summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law."[5]  The moving party has the burden of establishing that there is no genuine issue of material fact in dispute.[6]  The Court must take the moving party's evidence as true.[7]  Moreover, all inferences must be considered in a light most favorable to Hurley – the non-moving party.[8]  Further, since summary judgment is an extreme remedy, cutting off the rights of the Hurley,  the non-moving party, to present a case to the jury, the Court should not grant summary judgment unless "it is quite clear what the truth is [and] that no genuine issue remains for trial."[9]

---

[2] *See* ECF No. 69 at p. 1.

[3] *See Gallo v. Prudential Residential Services Ltd Partnership,* 22 F.3d 1219, 1223 (2d Cir. 1994) ("the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists.").

[4] *See Binder v. Long Island Lighting Co*., 933 F.2d 187, 191 (2d Cir.1991) (When "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate.").

[5] Fed. R. Civ. P. 56(c).

[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Thompson v. Gjivoje*. 896 F.2d 716, 720 (2d Cir. 1990) ("…where the nonmoving party bears the burden of proof at trial-as plaintiffs do here-it is its burden to come forward to demonstrate that there are issues that must be decided by a factfinder…because they may reasonably be decided in favor of either party.") (internal citations omitted).

[7] *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986) ("Once the movant has established a prima facie case demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts).

[8] *See Delaware & Hudson Ry. Co. v. Consolidated Rail Corp*., 902 F.2d 174, 177 (2d. Cir. 1990) ("We assess the record in the light most favorable to the non-movant and we draw all reasonable inferences in its favor.").

[9] *See Auletta v. Tully*, 576 F. Supp. 191, 194 (N.D.N.Y. 1983), *aff d*, 732 F.2d 142 (2d Cir. 1984).; *see also Egelston v. State Univ. Coll. at Geneseo*. 535 F.2d 752, 754 (2d Cir. 1976); *Gibralter v. City of New York*, 612 F.

The Court may not rely solely on the statement of undisputed facts contained in Fiduciary Network's Rule 56.1 statement; it must also be satisfied that the moving party's assertions are supported by the record.[10] Further, summary judgment may only be granted where the court is satisfied that the undisputed facts, as supported by the record, show that the moving party is entitled to judgment as a matter of law.[11]

Here, Fiduciary Network has failed to satisfy its burdens and, therefore, its motion for summary judgment must be denied in its entirety.

**B.    Fiduciary Network Is Not Entitled to Summary Judgement on Its Claim For Declaratory Judgment (First Claim For Relief).**

Fiduciary Network contends that it is entitled to declaratory relief, and that Hurley is not entitled to an award of attorneys' fees and expenses he incurred in connection with the internal investigation conducted by certain third parties.[12] Fiduciary Network has not satisfied its burden of demonstrating it is entitled to this relief.[13]

Hurley is entitled to reimbursement for the attorneys' fees and expenses he seeks because section 6.7(a) of the LLC Agreement provides for Hurley to be reimbursed for his legal fees and

---

Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that summary judgment "is a drastic remedy and should be applied sparingly").

[10] *See Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 72 (2d Cir. 2001) ("The local rule does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.").

[11] *See Champion v. Artuz*, 76 F.3d. 483, 486 (2d Cir. 1996) ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute "show that the moving party is entitled to a judgment as a matter of law."") (quoting Fed. R. Civ. P. 56(c)).

[12] *See* ECF No. 69 at p. 10-11.

[13] *See Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("summary judgment only is 'appropriate' when the moving party has met its burden of production under Fed. R. Civ. P. 56(c) 'to show initially the absence of a genuine issue concerning any material fact."").

expenses incurred in connection with the investigation.[14]  At a minimum, genuine issues of material fact exist.

Section 6.7(a) of the LLC Agreement provides, in pertinent part, that:

> (a) With respect to any claims, suits, actions or similar proceedings brought by any third party, the Company shall indemnify and hold harmless each current and each former manager, each current and each former Member, each current and each former officer and employee of the Company, and each former management member of the Company (each, an "Indemnitee") from any and all . . . (including reasonable attorneys' fees and disbursements), claim or damage (collectively, "Management Expenses") incurred or sustained by such Indemnitee by reason of (i) any act or omission in the conduct of the business of the Company in accordance with the provisions hereof, or (ii) such Indemnitee's service as a representative, officer, director, manager, principal, employee or agent of the Company, except in each case to the extent that such Management Expenses were incurred or sustained as a direct result of such Indemnitee's willful misconduct, gross negligence, bad faith or fraud.[15]

1.  **The investigation was initiated and conducted by third parties within the meaning of section 6.7(a) of the LLC Agreement.**

Fiduciary Network erroneously contends that Hurley is not entitled to reimbursement under section 6.7(a) because the internal investigation was not brought by a third party or third parties within the meaning of section 6.7(a).[16]  In pertinent part, section 6.7(a) provides that "With respect to any claims, suits, actions, or similar proceedings brought by any third party,[17] the Company [Fiduciary Network] shall indemnify and hold harmless" "each current and former employee of the Company. . . ."[18]  This requirement has been satisfied here because the Board of Fiduciary

---

[14] *See* Third Amended and Restated Limited Liability Company Operating Agreement of Fiduciary Network, LLC, dated July 1, 2016, at § 6.7, attached as Exhibit 8 to the Declaration of Michael J. Collins in support of Defendant Mark P. Hurley's Supplemental Rule 56.1 Statement (the "Collins Decl."), submitted herewith.

[15] *Id.*

[16] *See* ECF No. 69 at pp. 13-14.

[17] *See* Collins Decl., Ex. 8 at § 6.7.

[18] *Id.*

Network and its members are "third parties" within the meaning of section 6.7(a), because they are not signatories to the LLC agreement, and those members acted in their personal capacities and/or on behalf of Emigrant Bank and Howard Millstein throughout the investigation.[19]  At a minimum, genuine issues of material fact exist.

In addition, members of the Board commenced a lawsuit against Hurley styled: *Friedberg v. Hurley*, Index No. 651873/18 (NY Sup. Ct.).[20]  The Board members who were plaintiffs in *Friedberg v. Hurley*, Index No. 651873/18 (NY Sup. Ct.), are not signatories to the LLC agreement and, in prosecuting their case against Hurley, were acting in their personal capacities and on behalf of Emigrant Bank and Howard Millstein, and therefore they constitute third parties within the meaning of section 6.7(a) of the LLC Agreement.[21]

The petitioners in the *Friedberg* case sought to stay arbitration so they could conduct the investigation regarding Hurley.[22]  The Court denied their request.[23]  Nonetheless, the arbitration tribunal later ruled that they could conduct the investigation.[24]  The fees and expenses that Hurley incurred in connection with the investigation, which the Board sought to conduct in connection with the *Friedberg v. Hurley* case, are subject to section 6.7(a).[25]

---

[19] *See* Defendant's Objections and Answers to Plaintiff's Second Set of Interrogatories to Defendant, dated August 15, 2019, at ¶ 18, attached as Exhibit 12 to the Collins Decl.

[20] *See* Verified Petition for an Order Staying Arbitration filed by Barry Friedberg, Alain Lebec, John Sanders, Gregg Freedman, Karl Heckenberg, and EB Safe, LLC in *Barry Friedberg et al. v. Mark P. Hurley*, Index No. 651873/18, in the Supreme Court of the State of New York, dated April 17, 2018, attached as Exhibit 13 to the Collins Decl.

[21] *See* Collins Decl., Ex. 12 at ¶ 18.

[22] *Id.* at pp. 10-12.

[23] *See* Order in *Barry Friedberg et al. v. Mark P. Hurley*, Index No. 651873/18, in the Supreme Court of the State of New York, dated April 27, 2018, attached as Exhibit 14 to the Collins Decl.

[24] *See* Final Award in CPR File G-18-17-G-AA between EB Safe, LLC and Mark P. Hurley, dated May 24, 2018, at ¶ 189, attached as Exhibit 11 to the Collins Decl.

[25] *See* Collins Decl., Ex. 12, at ¶¶ 13-17; *see also* Collins Decl., Ex. 8 at § 6.7.

The fees and expenses incurred by Hurley were necessary for him to participate and defend himself in the investigation being conducted by the Board.[26]

At a minimum, genuine issues of material fact exist.

Accordingly, the Motion should be denied because Fiduciary Network has not demonstrated as a matter of law that the investigation was not initiated, conducted, and overseen by third parties.[27]

2. **The investigation constituted an "action" or "proceeding" within the meaning of section 6.7(a) of the LLC Agreement.**

Fiduciary Network also contends that Hurley is not entitled to reimbursement under section 6.7(a), because the internal investigation was not a "claim," "suit," "action" or "proceeding" within the meaning of section 6.7(a). This is wrong. First, the investigation constituted an "action" within the meaning of section 6.7(a).[28] Pursuant to the investigation, the Board and third parties purportedly were looking into whether Hurley was fit to be an employee and officer of Fiduciary Network.[29] They hired counsel.[30] Counsel interviewed witnesses.[31] This conduct constitutes an "action" under section 6.7(a).[32] Similarly, the investigation also constituted a "proceeding" under section 6.7(a).[33]

---

[26] *See* Collins Decl., Ex. 8 at § 6.7.

[27] *See* ECF No. 69 at pp. 11-12.

[28] *See* Collins Decl., Ex. 8 at § 6.7.

[29] *See* Collins Decl., Ex. 11 at ¶ 77

[30] *Id.* at ¶ 78.

[31] *See* Deposition Transcript of Mark P. Hurley, dated September 27, 2019, at p. 61, attached as Exhibit 9 to the Collins Decl.

[32] *See* Collins Decl., Ex. 8 at § 6.7.

[33] *Id.*

Fiduciary Network seeks to have the Court define the terms "action" using one of the definitions set forth in Black's Law Dictionary.[34]  Although Black's Law Dictionary provides that one definition of the word "action" is a "civil or criminal judicial proceeding," this is not the only meaning of the word "action" set forth in Black's Law Dictionary.[35]  This dictionary also provides that the term "action" includes the "process of doing something; conduct or behavior."[36]

Based on this latter definition, the investigation would constitute an "action" within the meaning of section 6.7(a) of the LLC Agreement."[37]  The third parties were taking action to determine whether Hurley was fit to remain as an employee or officer of Fiduciary Network.[38]  They hired counsel to conduct the investigation.[39]  Counsel conducted an investigation and did a report about her investigation.[40]

Fiduciary Network also relies on Black's Law Dictionary for the definition of the term "proceeding" used in section 6.7(a).[41]  Black's Law Dictionary does contain several definitions that construe the word "proceeding" in the context of judicial, administrative, or governmental conduct.[42]  These are not the only definitions for the word "proceeding."[43]

For example, The American Heritage Dictionary (college edition) defines the word "proceeding" as follows:

---

[34] *See* ECF No. 69 at p. 12.

[35] *See* definition of "action," Black's Law Dictionary (11th ed. 2019).

[36] *Id.*

[37] *Id.*; *see also* Collins Decl., Ex. 8 at § 6.7.

[38] See Collins Decl., Ex. 9 at pp. 51-54.

[39] *See* Collins Decl., Ex. 11 at ¶ 78.

[40] *See* Collins Decl., Ex. 9 at p. 61.

[41] *See* ECF No. 69 at p. 12.

[42] *See* definition of "proceeding," Black's Law Dictionary (11th ed. 2019).

[43] *Id.*

pro·ceed·ing. *n.* 1.  A course of action; procedure. 2. A continuing of an action. 3. proceedings. A sequence of events occurring at a particular place of occasion. 4. proceedings. A record of business carried on by a society or other organization; minutes. 5. *Law*. A. proceedings. Legal action; litigation. b. The instituting or conducting of litigation.[44]

In addition, Webster's New Colligate Dictionary defines the word "proceeding" to include besides a legal action, "EVENTS, HAPPENING;" "AFFAIR, TRANSACTION" or "an official recording of things said or done."[45]

Based on these definitions, the term "proceeding in section 6.7(a) is broad enough to include the investigation.[46]

In any event, Fiduciary Network's Motion must be denied because the pertinent language of section 6.7(a) of the LLC Agreement is ambiguous.  In particular, the words "claims," "suits," and "proceedings" as used in section 6.7(a) are ambiguous.[47]  Fiduciary Network purports to present dictionary definitions for these words,[48] but the relevant issue is what did the parties' intend when they used these words.  Fiduciary Network, however, has not presented any admissible evidence on this critical issue.[49]

The words in a contract are ambiguous when they "could suggest more than one meaning when viewed objectively by a reasonable intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business. . . ."[50]  The Second Circuit has stated

---

[44] American Heritage Dictionary (College ed.).

[45] Webster's New Collegiate Dictionary (5th ed.).

[46] *See* supra notes 42-45.

[47] *See* Collins Decl., Ex. 8 at § 6.7.

[48] *See* ECF No. 69 at pp. 11-12.

[49] *See generally* ECF No. 69.

[50] *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2016).

that "[s]ummary judgment is generally proper in a contract dispute only if the language of the contract is wholly ambiguous."[51]

For all these reasons, the Motion should be denied because the investigation constituted an "action" or "proceeding," as those terms are used in section 6.7(a), and the terms themselves are, at best, ambiguous.

3. **Section 6.7(a) has been satisfied because the attorneys' fees and expenses incurred by Hurley were incurred by reason of "his status as an employee and officer of Fiduciary Network."**

Fiduciary Network also contends that Hurley is not entitled to payment of his attorneys' fees and costs because they were not incurred "'by reason of (i) any act or omission in the conduct of the business of the Company in accordance with the provisions hereof, or (ii) [his] service as a representative, officer, director, manager, principal, employee or agent of the Company.'"[52] Section 6.7(a) of the LLC Agreement provides that "[w]ith respect to any claims, suits, actions or similar proceedings brought by any claims, suits, actions or similar proceedings brough by any third party, the Company "shall" reimburse managers or members (current and former) for their reasonable attorneys' fees and expenses incurred by reason of any act or omission while serving as a manager or employee.[53]  Hurley has satisfied this requirement because Fiduciary Network contends that Hurley's arrest and failure to disclose the arrest  reflected negatively on his ability to serve as an employee and officer of Fiduciary Network.[54]

---

[51] *Compagnie Financiere de CIC et de L'Union Europeene v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000).

[52] *See* ECF No. 69 at p. 14.

[53] *See* Collins Decl., Ex. 8 at § 6.7.

[54] *See* Collins Decl., Ex. 11 at ¶ 77; *see also* Letter from Gregg L. Weiner to the Tribunal seeking to submit amended counterclaims in CPR File G-18-17-G-AA between EB Safe, LLC and Mark P. Hurley, dated April 9, 2018, attached as Exhibit 10 to the Collins Decl.

Hurley's request for reimbursement of his attorneys' fees and expenses is based on the fact that the investigation was purportedly conducted as a result of Hurley's service as an officer and employee of Fiduciary Network.[55] In particular, in a letter dated March 30, 2018, Barry S. Friedman scheduled a special meeting to discuss the "commencement of internal investigation concerning alleged domestic violence by Mark Hurley and statements by Mr. Hurley to current and target portfolio companies concerning incident and arrest . . . ."[56] The letter also provides that at the special meeting, the Board will discuss "Suspension of Mr. Hurley with pay and benefits pending consideration by the Board of results of internal investigation and impact on the Company's business . . . ."[57]

As this letter demonstrates, the Investigation was directly related to Hurley's position as an officer and employee of Fiduciary Network.[58]

Accordingly, Hurley's request for reimbursement of his attorney's fees and expenses satisfies the requirements of section 6.7(a) of the LLC Agreement.[59]

4. **Fiduciary Network has not established as a matter of law that Hurley engaged in wrongful conduct.**

Fiduciary Network erroneously contends that Hurley is entitled to payment pursuant to section 6.7(a) because he engaged in wrongful conduct.[60] In particular, Fiduciary Network contends that "Defendant's legal fees and expenses were incurred as a direct result of his own misconduct because the alleged domestic violence constitutes serious misconduct, but also his

---

[55] *See* Collins Decl, Ex. 10 and Ex. 12 at ¶ 18.

[56] *See* Notice of Special Meeting to the Board of Fiduciary Network from Barry Friedberg and Gregg Friedman, dated March 30, 2018, attached as Exhibit 7 to the Collins Decl.

[57] *Id.*

[58] *Id.*

[59] *See* Collins Decl., Ex. 8 at § 6.7.

[60] *See* ECF No. 69 at pp. 15-17.

failure to inform the Board of his arrest constituted willful misconduct, or at the least gross negligence."[61]  Fiduciary Network has failed to satisfy its burden of demonstrating, through admissible evidence, that Hurley committed willful misconduct, gross negligence, bad faith, or fraud as a matter of law.[62]

Section 6.7(a) contains an exception for attorneys' fees and expenses incurred by Hurley that "were or sustained as a direct result of such Indemnitee's willful misconduct, gross negligence, bad faith or fraud."[63]  In particular, section 6.7(a) provides that reimbursement may not be granted "in each case to the extent such Management Expenses were incurred or sustained as a direct result such Indemnities willful misconduct, gross negligence, bad faith or fraud."[64]

The language of section 6.7(a) demonstrates that there must have been a determination that Hurley engaged in such conduct to warrant denial of reimbursement.  Of course, mere allegations are not sufficient.  Fiduciary Network has not presented any admissible evidence that any court has determined that Hurley engaged in such conduct.[65]  In addition, Fiduciary Network has not presented any admissible evidence that any arbitrator or governmental agency or entity has concluded that Hurley engaged in such conduct.  Accordingly, Fiduciary Network is not entitled to summary judgment because it has not demonstrated that it is entitled to judgment as a matter of law.

---

[61] *Id.* at p. 16.

[62] *See generally* ECF No. 69.

[63] *See* Collins Decl., Ex. 8 at § 6.7.

[64] *Id.*

[65] *See generally* ECF No. 69.

5. **The attorneys' fees and expenses Hurley incurred in connection with the investigation are separate and apart from the fees he incurred in connection with the arbitration.**

Fiduciary Network erroneously contends that Hurley "appears to be seeking the same legal fees and expenses that he previously sought in the arbitration."[66] This is not true. Hurley is seeking reimbursement for the attorneys' fees and expenses he incurred in connection with the Internal Investigation.[67] Fiduciary Network has presented no admissible evidence to support its argument.[68] At best for Fiduciary Network, genuine issues of material fact exist.[69]

6. **Hurley does not contend that section 18-108 of the Delaware Limited Liability Company Act mandates that he is entitled to reimbursement of the attorneys' fees and expenses he incurred in connection with the investigation.**

Fiduciary Network erroneously contends that Hurley is taking the position that "indemnification is mandated by Section 18-108 of the Delaware Limited Liability Company Act."[70] Hurley, however, is not making this argument.

7. **Summary.**

For all the reasons stated above, Fiduciary Network is not entitled to summary judgment on its claim for declaratory relief (first claim for relief). In addition, Fiduciary Network's Motion must be denied because the Board resolved to reimburse the legal fees and expenses of Fiduciary Network's employees incurred in the investigation, and Hurley was, and was suspended in his capacity as, an employee of Fiduciary Network.[71] In particular, the Board authorized reimbursement of employees' legal fees and expenses, which includes Hurley's legal fees and

---

[66] *See* ECF No. 69 at p. 14.

[67] *See* Collins Decl, Ex. 10 and Ex. 12 at ¶ 18.

[68] *See generally* ECF No. 69.

[69] *Id.*

[70] *See* ECF No. 69 at p. 17.

[71] *See* Declaration of Neil A. Steiner, dated June 18, 2020 (ECF No. 66), at Exhibit 17.

expenses claimed in the Demand Letter.[72]  The Board further resolved to reimburse the legal fees and expenses of Fiduciary Network's employees incurred in the investigation, and Hurley was, and was suspended in his capacity as, a Fiduciary Network employee.[73]

For all these reasons, Fiduciary Network's Motion for summary judgment on its first claim for relief (declaratory relief) should be denied.

## C. Fiduciary Network Is Not Entitled To Summary Judgment On The Liability Portion Of Its Claim For Tortious Interference With Prospective Economic Advantage (Second Claim For Relief).

Fiduciary Network erroneously contends that it is entitled to summary judgment on the liability aspects of its claims against Hurley for tortious interference with prospective business advantage.[74]

Under New York law, the elements of a claims for tortious interference with prospective business advantage are:

1. Fiduciary Network had a prospective business relationship with a third party;
2. Hurley knew of the relationship;
3. Hurley acted solely out of malice;
4. Hurley's conduct amounted to a crime or an independent tort;
5. Hurley's conduct was the cause-in-fact (the "but for" causation) for Fiduciary Network not obtaining that relationship;
6. Hurley's conduct was the proximate cause for Fiduciary Network not obtaining that relationship; and
7. Fiduciary Network incurred damages.[75]

Fiduciary Network conceded that it is not seeking summary judgment on the requirement that it demonstrate the amount of the alleged damages it supposedly has suffered.[76]

---

[72] *Id.*

[73] *See* Collins Decl., Ex. 12 at ¶ 18.

[74] *See* ECF No. 69 at pp. 18-21.

[75] *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).

[76] *See* ECF No. 69 at p. 23.

At trial, Fiduciary Network will have the burden on each element of its tortious interference claim, and must present admissible evidence on each element.[77] Accordingly, in connection with its Motion, Fiduciary Network must establish that no genuine issues of material fact exist as to each of the first six elements of its tortious interference claim using admissible evidence.[78]

As stated above, Fiduciary Network must demonstrate that Hurley used "wrongful means."[79] Under New York law, Fiduciary Network must establish that Hurley's alleged interference "amounted to a crime or independent tort."[80] Under New York law, wrongful means includes physical violence, fraud or misrepresentation, civil suits and criminal prosecutions and some degrees of economic pressure.[81] An exception to this rule occurs when the plaintiff shows that the defendant was motivated solely by malice.[82]

Fiduciary Network contends that Hurley engaged in wrongful conduct because he attached certain documents to the petition he filed in Texas state court, which were treated as confidential in the second arbitration between Hurley and EB Safe, LLC.[83] Hurley did not know that certain of the exhibits attached to the Texas Petition included documents that were subject to a confidential

---

[77] *See Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001) ("summary judgment only is 'appropriate' when the moving party has met its burden of production under Fed. R. Civ. P. 56(c) 'to show initially the absence of a genuine issue concerning material fact.'").

[78] *Id.*

[79] *See Carvel Corp. v. Noonan*, 818 N.E.2d 1100 (N.Y. 2004).

[80] *See PKG Group, LLC v. Gamma Croma, S.p.A.*, 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006) ("In all but the most egregious circumstances, "dishonest, unfair, or improper means" must amount to misconduct that constitutes either a crime or an independent tort.").

[81] *See* Restatement Second of Torts § 768, cmt. (e) ("Wrongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract.").

[82] *See Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164 (S.D.N.Y.2008) ("Thus, concluded the Court, "as a general rule, a defendant's conduct must amount to a crime or an independent tort" in order to state a claim for tortious interference. Notwithstanding that general rule, the Court recognized that other interference not necessarily rising to that level could be so "culpable" as to sustain a claim: for example, interference taken solely out of malice.") (internal citations omitted).

[83] *See* ECF No. 69 at pp. 1-2.

order in the second arbitration.[84]  Those documents were inadvertently included by his counsel

from Brewer, Attorneys & Counselors.[85]  The attorneys made this mistake without Hurley's

knowledge.[86]  Accordingly, Fiduciary Network has not satisfied its burden of demonstrating that

this issue involved any conduct by Hurley and, therefore, have not shown that Hurley used any

wrongful means.  As stated, Hurley's counsel from Brewer, Attorneys & Counselors included the

exhibits without his knowledge.[87]

In any event, Fiduciary Network has not demonstrated that, as a matter of law, this conduct

constituted a crime.[88]  In addition, Fiduciary Network has not demonstrated as a matter of law that

this alleged conduct constituted an independent tort.[89]

In its memorandum of law, Fiduciary Network states that: "Following his termination from

the Company, Hurley was motivated by a desire and purpose of harming Fiduciary Network.[90]

Fiduciary Network has presented no admissible evidence to support this proposition.  Fiduciary

Network then contends that "Hurley used dishonest, unfair or improper means when he forwarded

information to the chief executive officers of the Portfolio Companies that was subject to the

Confidentiality Order in the second arbitration and had previously been ordered sealed by a New

York court."[91]  Fiduciary Network also contends that, "Hurley acted out of spite and for the sole

---

[84] See Affirmation of Farida Ali, dated January 5, 2019, filed in Case No 651873/2018 (N.Y Sup. Ct. 2018), attached as Exhibit 2 to the Collins Decl.

[85] *Id.* at ¶ 6.

[86] *Id.*

[87] *Id.*

[88] *See generally* ECF No. 69.

[89] *Id.*

[90] *See* ECF No. 69 at p. 19.

[91] *Id.*

purpose of harming Fiduciary Network when he contacted all of the Portfolio Companies' chief executive officers and advised them that all employees of the Company had been terminated."[92]

Fiduciary Network has presented no admissible evidence to support these arguments.[93] In addition, at best for Fiduciary Network, genuine issues of material fact exists.[94]

In particular, Hurley testified at his deposition that:

> A. Well, there's a – they're – ask a lot of questions. These guys call me a lot to ask questions; like, for example, your client went into the media and talked about how they were willing to renegotiating certain aspects of existing deals. And so I'd had a lot of people calling me asking questions involving documents and things like that. Not – not from a legal standpoint, but just, you know, help me understand this part of how – how you, you when you were running the company, how you thought – thought this worked.[95]

Hurley also testified that:

> A. I called all of the CEOs because I learned that they were terminating all the employees of the Company. I was very concerned they – and – and the relationship between Fiduciary Network and the CEOs is one that there's a lot of ongoing stuff between them, and literally the next day there would be nobody there. And I wanted to give them a heads up that we'd all been terminated, just to let them know.[96]

In addition, Hurley testified that:

> A. No. I told them that everybody in the organization had been terminated, and what that implication meant that people they were working with in the organization on very important matters specific to their organization, those people were not going to be there any longer. And therefore it was unclear, you know, what would happen

---

[92] *Id.* at p. 20.

[93] *See generally* ECF No. 69.

[94] *Id.*

[95] *See* Collins Decl., Ex. 9 at p. 117.

[96] *Id.* at p. 97.

in terms of how long it would take or a decision process or what would be needed to get those matters resolved.[97]

Moreover, Hurley testified that:

> So I didn't mention that to the firms, but I was just very concerned that these people, who many are very close friends of mine and had incredibly great businesses and had been great partners to work with, wouldn't know what the heck was going on, and I had to give them a heads up that everybody's gone, you just need to know that, and what's going to happen, I don't know.[98]

At a minimum, Hurley's deposition testimony demonstrates that genuine issues of material fact exist.

Fiduciary Network also contends that Hurley acted through wrongful means because he filed a frivolous lawsuit in Texas. On December 7, 2018, Hurley filed a lawsuit against Emigrant Bank, EB Safe, LLC, and various Directors of EB Safe, LLC ("Defendants") in Texas state court, alleging claims for tortious interference, defamation, business disparagement, breach of fiduciary duty and civil conspiracy, stemming from the forced sale and subsequent purchase of Fiduciary Network.[99] On January 3, 2019, Defendants removed the case to the United States District Court for the Northern District of Texas, Dallas Division.[100] Thereafter, on January 10, 2019, Defendants filed a motion to compel arbitration based on the arbitration clause contained in Fiduciary Network's LLC Agreement, which included only Hurley as a signatory.[101]

Fiduciary Network contends that the Texas lawsuit was frivolous. However, as the Texas District Court acknowledged in its 21-page Memorandum Opinion and Order granting the motion

---

[97] *Id.* at p. 92.

[98] *Id.*

[99] *See* Memorandum Opinion and Order (ECF No. 50) pp.1-5, filed in *Mark P. Hurley and J.A. Brookview, LLC v. Emigrant Bank et al.*, Case No. 3:19-cv-0011 (N. D. Texas 2019), attached as Exhibit 6 to the Collins Decl.

[100] *Id.* at p. 5.

[101] *Id.*

to compel arbitration, the question of whether the parties should arbitrate was not inherently obvious.[102]   The Court engaged in extensive analysis prior to ordering arbitration, making any claims of frivolity moot.

Litigation that requires meaningful court intervention cannot be considered frivolous.[103] Notably, under New York law, a lawsuit may only be considered frivolous, if the litigation is unwarranted, and brought in bad faith with no belief in its merit.[104]   Moreover, "a court cannot properly consider a claim to be frivolous on its face if it finds that the plaintiff must be allowed to litigate the claim,"[105] or continue an existing action.[106]   It is undisputed that the Texas litigation was active in the Northern District for over eight months, during which time the parties engaged in extensive motion practice.[107]   Accordingly, Fiduciary Networks has not demonstrated Hurley's Texas lawsuit was frivolous.

In compliance with the Texas' Court's decision, Hurley and Fiduciary Network commenced arbitration on March 10, 2020.[108]   The arbitration tribunal has entered a scheduling order, the parties have commenced discovery, and a final hearing has been scheduled.[109]   At best for Fiduciary Network, genuine issues of material fact exist as to the Texas lawsuit and the pending arbitration.

---

[102] *Id.* at pp. 11-17

[103] *Missigman v. USI Northeast, Inc.*, 131 F. Supp. 2d 495, 515 (S.D. N.Y. 2001) ("Indeed, unwarranted litigation brought in bad faith with no belief in its merit constitutes "improper means.").

[104] *Id.*

[105] *See LeBlanc Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir. 1998).

[106] *See Kidder, Peabody & Co. v. IAG Intern. Acceptance, Group N.V.*, Case no. 94 Civ. 4725 CSH, 1997 WL 539772 at 8* (S.D.N.Y. 1997) ("I have found no New York case in which the process of continuing a suit, seeking to amend a complaint, or defending against summary judgment may themselves constitute tortious interference.").

[107] *See* Memorandum Opinion and Order granting Motion to Compel Arbitration, filed in Case No. 3:19-cv-0011 (N.D.Tex. 2019), dated October 25, 2019, attached as Exhibit 6 to the Collins Decl.

[108] *See* Collins Decl. at ¶ 3.

[109] *Id.* at ¶ 4.

Further, Fiduciary Network erroneously contends that, "Hurley readily admits that he thereafter sought to help the Portfolio Companies by providing strategic advice concerning the potential for renegotiating their existing agreements with Fiduciary Network."[110] Fiduciary Network cites to Hurley's deposition testimony to support this proposition but Hurley did not testify that he provided strategic advice.[111]

In his deposition, Hurley testified that:

> A. Well, there's a – they're – ask a lot of questions. These guys call me a lot to ask questions; like, for example, your client went into the media and talked about how they were willing to renegotiating certain aspects of existing deals. And so I'd had a lot of people calling me asking questions involving documents and things like that. Not – not from a legal standpoint, but just, you know, help me understand this part of how – how you, you when you were running the company, how you thought – thought this worked.[112]

In addition, he testified that:

> A. Yeah, they've ask – they've ask questions about documents because, I think, based on some public information, it was in the "Financial Planning," there was an article where they were talking about they were trying to reduce the stringent terms that I had imposed upon them or something like that and renegotiate deals. So I've talked to them.[113]

At best for Fiduciary Network, Hurley's deposition testimony creates genuine issues of material fact.[114]

In addition, Fiduciary Network's allegations concerning the Portfolio Companies have no bearing on Fiduciary Network's tortious interference claim, to the extent it is based on Fiduciary

---

[110] *See* ECF No. 69 at p. 20.

[111] *Id.*

[112] *See* Collins Decl., Ex. 9 at p. 117.

[113] *Id.* at pp. 113-114.

[114] *See* Fed. R. Civ. P. 56(c) (summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.").

Network's alleged interactions with Lourd Murray, because Lourd Murray is not a Portfolio Company, and Fiduciary Network has not presented any evidence that Hurley attempted to contact the chief executive officer of Lourd Murray.[115]

In support of its purported tortious interference claim based on Lourd Murray, Fiduciary Network contends that, "[t]he investment banker on the deal thereafter contacted Karl Heckenberg and advised him that 'Fiduciary Network had submitted a very compelling bid for the business'"[116] Fiduciary Network also states that "the investment banker once again told Mr. Heckenberg that '[i]t was a very interesting bid.'"[117] Fiduciary Network relies on the inadmissible hearsay testimony of Karl Heckenberg who purports to rely on conversations he supposedly had with an investment banker for Lourd Murray.[118] Thus, this purported evidence should not be considered because it is inadmissible hearsay.[119]

In addition, Fiduciary Network has failed to demonstrate that Hurley's alleged conduct was (1) the cause-in-fact (but for cause) and (2) the proximate cause of its alleged harm.[120] The Motion should be denied because Fiduciary Network has failed to present any admissible evidence to establish the elements of tortious interference as a matter of law.[121]

For all these reasons, Fiduciary Network is not entitled to summary judgment on its tortious interference claim.

---

[115] *See generally* ECF No. 69.

[116] *See* ECF No 69 at p. 8.

[117] *Id.*

[118] *See* Defendant Mark P. Hurley's Motion to Strike Certain Evidence Filed in Support of Plaintiff Fiduciary Network, LLC's Motion for Summary Judgment, filed herewith.

[119] *Id.* at p. 4-6.

[120] *See generally* ECF No. 69.

[121] *Id.*

**D. Fiduciary Network Is Not Entitled To Summary Judgment On Its Request For Injunctive Relief (Third Claim For Relief).**

For all these reasons stated above in connection with Fiduciary Network's claims for tortious interference with prospective business advantage, Fiduciary Network is not entitled to summary judgment on its request for permanent injunctive relief, based on its claim for tortious interference with prospective business advantage.

Fiduciary Network also has not satisfied the elements for a permanent injunction. Those elements are: (1) that Fiduciary Network has suffered "irreparable" injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships, between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[122]

Fiduciary Network has not presented any admissible evidence that the alleged conduct which serves as a basis for its request for permanent injunctive relief will continue in the future.[123] The alleged conduct in question in connection with its tortious interference claim purportedly took place no later than the Spring of 2019.[124] Fiduciary Network has presented no admissible evidence that any alleged wrongful conduct has occurred since then.[125] Accordingly, Fiduciary Network

---

[122] *U.S.S.E.C. v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 296 (2d Cir. 2014) ("eBay makes clear that a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."); *Forest City Daly Hous., Inc. v. Town of North Hempstead*, 175 F.3d 144, 153 (2d Cir.1999) ("Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages.") (internal quotation omitted).

[123] *Supra* note 1.

[124] *See generally* ECF No. 69.

[125] *Id.*

has not demonstrated that it will suffer "irreparable" injury or any unfair prejudice if a permanent injunction is not issued.[126]

For all these reasons, the Motion should be denied in connection with Fiduciary Network's request for entry of a permanent injunction.

**E.      Fiduciary Network's Motion Should Be Denied For All The Reasons Stated In Connection With Hurley's Motion For Partial Summary Judgment.**

On June 18, 2020, Hurley filed his motion for partial summary judgment,[127] and supporting papers.[128]  In those papers, Hurley contends that he is entitled to summary judgment on Fiduciary Network's tortious interference claim because:

1) Hurley's filing of the Texas lawsuit cannot be the basis for a tortious interference claim under New York law;[129]

2) Fiduciary Network's tortious interference claim is barred by the *Noerr Pennington* doctrine; and

3) Fiduciary Network's tortious interference claim, and request for injunctive relief based on its tortious interference claims, are barred by the doctrine of litigation privilege.[130]

As Hurley demonstrated in those papers, he is entitled to summary judgment on Fiduciary Network's second claim for relief (tortious interference), and third claim for relief (injunctive relief based on the tortious interference claim).[131]

---

[126] *Id.*; *see also supra note* 122.

[127] *See* ECF Nos. 61 and 63.

[128] See ECF Nos. 62 and 64.

[129] *See* ECF No. 63 at p. 8.

[130] *Id.* at p. 17.

[131] *See generally* ECF No. 63.

For all the reasons set forth in those papers, Fiduciary Network's motion for summary judgment on its second claim for relief (tortious interference), and its third claim for relief (injunctive relief based on the tortious interference claim) should be denied.[132]

Accordingly, for purposes of Hurley's response to Fiduciary Network's motion for summary judgment, Hurley incorporates by reference those papers so as to not duplicate his filings.[133]

## F. Fiduciary Network's Motion Should Be Denied Because It Does Not Have Standing To Assert Certain Aspects Of Its Claims.

In order to properly assert a claim for tortious interference, the party bringing that claim must have standing.[134] To have standing, the plaintiff must have had the business expectancy in question.[135]

Fiduciary Network does not have standing to assert a tortious interference claim based on Pathstone Federal Street's alleged lost business deals with EMM Wealth and William Harris Investors, Inc. or RegentAtlantic's transaction with Hillview Capital Advisors.

Only a party that is actually aggrieved by the breach of alleged interference may assert a claim for tortious interference with business relations or prospective business advantages.[136] Fiduciary Network alleges that Pathstone's potential business relationships with EMM and WHI

---

[132] *Id.*

[133] *See* ECF Nos. 61-64.

[134] *See Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir.1994) ("Standing to maintain an action 'cannot be inferred argumentatively from averments in the pleadings, ... but rather must affirmatively appear in the record.'").

[135] *See Debary v. Harrah's Operating Co., Inc.*, 465 F. Supp. 2d 250, 262 (S.D.N.Y. 2006) ("Since ... defendants are neither parties to, nor third-party beneficiaries of [the contract] they lack standing to bring a claim for tortious interference with that contract") (quoting *Wells Fargo Bank N.W., N.A. v. Energy Ammonia Transp. Corp.*, No. 01–CV–5861, 2002 WL 1343757, at *1 (S.D.N.Y. June 18, 2002)).

[136] *See Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993) ("Since damage is an essential element of the tort, the claim is not enforceable until damages are sustained.").

were harmed by Hurley's alleged wrongful conduct. However, there is no direct connection between EMM and WHI's business relationship with Pathstone, and Fiduciary Network. Rather, any to injury to Fiduciary Network stemming from Pathstone's alleged lost business deals with EMM and WHI would be derivative of Pathstone.[137] Simply having an economic interest in another's contract or business is not sufficient to state a claim for interference with that person's economic relationships.[138]

Fiduciary Network does not have standing to assert claims based on allegations that Pathstone lost business deals with EMM Wealth ("EMM") and William Harris Investors, Inc. ("WHI"), due to Hurley's alleged tortious interference. Any claims for damages belong to Pathstone, because any alleged damages incurred by Fiduciary Network would be derivative of any harm that Pathstone may have suffered.[139] Fiduciary Network has not demonstrated that it has have any direct claims against Hurley based on Pathstone's alleged loss of transactions with EMM and WHI. Notably, Pathstone has not asserted any direct claims against Hurley. Accordingly, Fiduciary Network is not entitled to summary judgment on this claim, because Fiduciary Network does not have standing to assert Pathstone's claims.

In addition, Fiduciary Network does not have standing to assert claims based on any harm caused to RegentAtlantic, stemming from any delay in its acquisition of Hillview Capital Advisors ("HCA"). Fiduciary Network contends that Hurley's filing of a lawsuit in Texas delayed

---

[137] *See I.R.V. Merch. Corp., v. Jay Ward Prods., Inc.,* 856 F. Supp. 168, 175 (S.D.N.Y. 1994) (holding that a licensing agent did not have a claim for tortious interference with prospective economic advantage when its sole relationship with the licensee was acting as an agent); *Maruki, Inc. v. Lefrak Fifth Ave. Corp.,* 161 A.D.2d 264, 268 (1st Dep't 1990) (holding that "the law is well settled that tortious interference with contract does not extend" to a broker not party to the contract with which defendant purportedly interfered).

[138] *See Alvord & Swift v. Stewart M. Mueller Constr. Co.,* 385 N.E.2d 1238, 1241 (1978) (holding that subcontractor did not have claim for tortious interference of a contract between owner and contractor).

[139] *See El Paso Pipeline Co, LLC v. Brinckerhoff,* 152 A.3d 1248, 1252 (Del. 2016) ("That individual limited partners might press the limited partnership's rights as derivative plaintiffs does not make the claims ones belonging to them individually.").

RegentAtlantic's acquisition of HCA, which caused Fiduciary Network to lose months of interest, because it would have provided funds to RegentAtlantic in connection with the transaction with HCA. Fiduciary Network's alleged harm is derivative to any harm to RegentAtlantic.[140] Notably, Fiduciary Network has not presented any evidence that RegentAtlantic has asserted a claim against Hurley.

Any harm caused by Pathstone's loss of deals with EMM and WHI would have been suffered by Pathstone. Any harm to Fiduciary Network would have been derivative of any alleged harm to Pathstone. Similarly, any harm to Fiduciary Network caused by any delay in RegentAtlantic's ability to close its deal with HCA would be derivative of any alleged harm to RegentAtlantic.

## III.

## CONCLUSION

As demonstrated above, Plaintiff Fiduciary Network, LLC is not entitled to summary judgment on any of its claims. Accordingly, Defendant Mark P. Hurley respectfully requests that the Court deny Plaintiff Fiduciary Network, LLC's motion for summary judgment and that the Court grant Hurley all other appropriate relief.

---

[140] *See Cordts-Auth v. Crunk, LLC*, 815 F.Supp2d 778, 786 (S.D.N.Y. 2011) ("Several of Plaintiff's claims are derivative in nature—that is, Plaintiff purports to assert these claims on behalf of [LLC] to vindicate injuries allegedly suffered by [LLC].").

Respectfully submitted,

By: */s/ Michael J. Collins*
  William A. Brewer III (Bar No. 700217)
  wab@brewerattorneys.com
  Michael J. Collins (Bar No. 3971348)
  mjc@brewerattorneys.com
  BREWER, ATTORNEYS & COUNSELORS
  750 Lexington Avenue, 14th Floor
  New York, New York 10022
  Telephone: (212) 489-1400
  Facsimile: (212) 751-2849

  **ATTORNEYS FOR DEFENDANT**
  **MARK P. HURLEY**


## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July, 2020, a true and correct copy of Defendant Mark P. Hurley's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment was served via electronic filing on the following counsel of record:

  Neil A. Steiner
  Hayoung Park
  DECHERT LLP
  1095 Avenue of the Americas
  New York, New York 10036-6797
  Telephone: (212) 698-3500
  Neil.Steiner@dechert.com
  Hayoung.Park@dechert.com

  By:  */s/ Michael J. Collins*
    Michael J. Collins

4823-7090-7074.22
-